<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN LAWRENCE RUSSO, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> VOORHEES TOWNSHIP, VOORHEES : <br> TOWNSHIP POLICE DEPARTMENT, and : <br> POLICE OFFICER 24, : <br> : <br> Defendants. : | Civil Action No. 04-3385 <br><br> OPINION |

**Appearances:**

 Thomas S. Farnish, Esq.
 1800 JFK Boulevard, Suite 500
 Philadelphia, PA 19103
  Attorney for the Plaintiff

 William A. Garrigle, Esq.
 1415 Marlton Pike East, Suite 311
 Cherry Hill, New Jersey 08034-2210
  Attorney for Defendants

**RODRIGUEZ, SENIOR DISTRICT JUDGE:**

This matter comes before the Court on Defendants' Motion for Summary Judgment [8] pursuant to Fed. R. Civ. P. 56. Defendants seek judgment as to counts I, III, IV and V. For the reasons stated below, the motion will be granted.

**I.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

The investigation report of Defendant Officer 24, Detective Robert Monahan ("Detective Monahan"), indicates that Carolyn Thomas ("the victim") spoke to him on April 29, 2003

regarding a sexual assault that occurred in March 2003.  (Def. Br., Exh. G.)  The victim wanted to sign a criminal complaint against Plaintiff John Lawrence Russo ("Russo") for rape.  (Id.)  After obtaining the statement from the victim, Detective Monahan contacted Voorhees Township Municipal Judge Michael Diamond to obtain a warrant for Russo's arrest.  (Def. Br., Exh. H, p. 29.)  Detective Monahan conducted no further investigation beyond the victim's statements because no evidence remained since she had washed her clothes and cleaned her home after the incident.  (Id. at 27.)

    Once the warrant was authorized, Detective Monahan prepared the complaint, which was signed by the victim.  (Id. at 37.)  Detective Monahan went to the home of Russo's friend, Dean Schemanski ("Dean") and spoke with his brother, Glen Schemanski ("Glen").  (Def. Br., Exh. G.)  The report claims that Glen informed Detective Monahan both that Russo was not there and that he was Russo's attorney.  (Id.)  According to Detective Monahan's deposition, Dean provided information contrary to the victim's statement.  Dean faxed over a log of phone calls the victim had placed to him.  In addition to Glen's statements, the records cited a history of the victim's erratic behavior and indicated that she had made demands for money "because of what was done to her."  (Def. Br., Exh. H, p. 45.)  Detective Monahan indicated that these facts did not weigh into the validity of the complaint.  (Id.)

    Russo contacted Detective Monahan on April 30, 2003 and was instructed to report to the Police Department.  (Id.)  According to Detective Monahan, Russo reported that day to the Police Department with his attorney, was advised of the charges filed against him, and was processed and remanded to the Camden County Correctional Facility in lieu of bail.  (Id.)  Bail was set at fifty thousand dollars ($50,000) based on charges of second degree sexual assault and aggravated

assault.  (Compl. ¶ 20.)  The complaint alleges that on May 1, 2003 the charge of aggravated assault was dropped and bail was reduced to twenty-five thousand dollars ($25,000), at which point Russo posted bail and was released from custody.  (Compl. ¶ 25, 26.)  Plaintiff was incarcerated from April 30, 2003 until May 2, 2003.  (Compl. ¶ 22.)  Russo claims that on July 12, 2003 the remaining charge of second degree sexual assault was administratively dropped.  (Compl. ¶ 27.)

Russo has filed claims under 42 U.S.C. §§ 1983, 1985(3) and 1986 based on allegations of unlawful arrest.  Russo alleges that Detective Monahan unlawfully obtained a warrant and subsequently arrested Russo violating numerous constitutional rights under §§ 1983, 1985(3) and 1986.[1]  Defendants Voorhees Township and Voorhees Township Police Department are alleged to have intentionally and deliberately failed to adequately train, supervise, discipline or otherwise direct against these violations, thereby causing, encouraging and condoning such acts.  In addition to these actions, Russo's complaint alleges intentional or negligent infliction of emotion distress, defamation, and otherwise willful, wanton and reckless misconduct which caused monetary loss.  Defendants' summary judgment motion seeks to dismiss the §§ 1983, 1985(3), and 1986 claims against the relevant Defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to

---

[1] Plaintiff claims Fourth Amendment (illegally detained for unreasonable period), Fifth Amendment (due process), Sixth Amendment (deprivation of counsel) and Eighth Amendment (cruel and unusual treatment) violations, all guaranteed under the Fourteenth Amendment as having been done under color of state authority.  Plaintiff also claims false arrest, false imprisonment, malicious abuse and malicious process as violations of constitutional rights.

3

judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the Court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga

v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the fact finder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.  DISCUSSION

Defendants move to dismiss Russo's 42 U.S.C. § 1983 claims on the theory that they are qualifiedly immune, if the claims are not otherwise invalid.  (Def. Br., p. 19).  Defendants also move for summary judgment to dismiss Russo's claims under 42 U.S.C. §§ 1985(3) and 1986 on the theory that Russo failed to identify any racial or otherwise invidiously discriminatory class basis.  (Def. Br., p. 15).   These arguments will be taken in turn.

**A.  Plaintiff's § 1983 Claims Against Defendants**

Title 42 U.S.C. § 1983 provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution.  See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).  Section 1983 does not itself confer any substantive rights; it merely serves as a vehicle to enforce rights granted through the Constitution or through federal law.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).   To state a claim

under § 1983, a plaintiff must establish two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed by a person acting under the color of state law.[2] West v. Atkins, 487 U.S. 42, 48 (1988).  Here, Detective Monahan was acting under color of state law because he was a police officer acting in the line of duty.

Russo alleges that Defendants violated his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by virtue of a false arrest, false imprisonment, illegal detention for an unreasonable period of time, cruel and unusual treatment, and deprivation of liberty without due process of law.

1. Section 1983 claims against Detective Monahan

Detective Monahan seeks dismissal of the § 1983 claims against him on the theory that he is entitled to qualified immunity.  Governmental officials are generally granted qualified immunity so that they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

When conducting a qualified immunity analysis, the Court must first consider whether "plaintiff's allegations, if true, establish a constitutional violation."  Hope v. Pelzer, 536 U.S.

---

[2]  The statute provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (2000).

730, 736 (2002). If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. Saucier v. Katz, 533 U.S. 194, 201 (2001). If a constitutional right is found, the Court's next inquiry is to "determine whether that right was clearly established at the time of the alleged violation." Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000) (citing Conn v. Gabbert, 526 U.S. 286, 290 (1999)). That is, "would [it] be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201-02 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). Summary judgment is appropriate if no reasonable juror could conclude that complainant's "clearly established rights were violated." Wilson, 212 F.3d at 786 (citing Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995)).

Russo claims that he was, inter alia, arrested without probable cause in violation of his Fourth Amendment right to be free from unreasonable seizure. Russo acknowledges that he was arrested pursuant to an arrest warrant, but claims that the warrant was unsupported by probable cause. However, the statement given to the municipal court judge by Detective Monahan clearly establishes probable cause: he was told that a sexual assault had taken place and that the victim had identified the assailant because she knew him as a friend of a man that she had been dating.

Although an arrest warrant does not, in and of itself, protect an officer from liability for false arrest, Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997), in order to succeed in a § 1983 action for false arrest made pursuant to a warrant, the plaintiff must show, by preponderance of the evidence: (1) that the police officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;" and (2) that "such statements or omissions are material, or necessary, to

the finding of probable cause." Wilson, 212 F.3d at 786-787.

    a. Reckless Disregard for the Truth

  Omissions are made with reckless disregard "if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" Id. at 788 (citing U.S. v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993)).  In Wilson, the plaintiff alleged that the police officer omitted the following in his warrant application: (1) the height differential between eye witness accounts and the defendant; (2) the inability of one eyewitness to pick the defendant out of the photo array; (3) the ethnic differences in the defendant and other individuals in the photo array; and (4) the absence of height and weight in the photo array.  Id.  The Third Circuit held that the height differential and the inability of an eyewitness to identify the defendant were "'the kind of thing[s] the judge would wish to know.'" Id. (citing Jacobs, 986 F.2d at 1235).

  In this case, Russo alleges that Detective Monahan omitted from his warrant application the existence of telephone records indicating demands for money made by the victim.  Russo states that "[t]his information clearly indicated that [the victim] had other motivations in accusing [Russo] of rape and that she engaged in erratic behavior in the past."  (Pl. Opp., p. 15.) Moreover, Russo claims that Detective Monahan did not follow the Voorhees Township Police Department's policy with respect to sexual assault investigations, including collecting physical evidence and witness statements.  To the extent that Russo suggests that the Department is unable to make an arrest for a sexual assault when there are neither witnesses nor physical evidence, his argument must be rejected.  However, for the purposes of summary judgment, the Court finds that Dean's call log and the victim's requests for money to keep quiet are the kind of

8

things that the municipal judge would wish to know.

        b. Materiality

Because there is sufficient evidence of omissions made knowingly, or with reckless disregard for the truth, the Court must assess whether the omissions were "material, or necessary to the finding of probable cause." Id. (citing Sherwood, 113 F.3d at 399.) In order to make this determination, the Court "insert[s] the facts recklessly omitted, and then determine[s] whether or not the 'corrected' warrant affidavit would establish probable case." Id. (citing Sherwood, 113 F.3d at 399.) If it does, summary judgment is appropriate because Russo would have been arrested, notwithstanding the omissions in Detective Monahan's presentation to the municipal judge. Id.

To establish probable cause, there must be a "fair probability" that the person committed the crime at issue. Sherwood, 113 F.3d at 401. "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti, 71 F.3d at 483. The arresting officer may only be liable for an arrest if "no reasonable competent officer" would conclude that probable cause existed. Wilson, 212 F.3d at 790 (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Although the positive identification by a victim witness can be sufficient to establish probable cause, independent exculpatory evidence or <u>substantial</u> evidence toward a witness's own reliability, known by the arresting officers, could outweigh the identification such that probable cause would not exist. Id. In Wilson, the court, engaging in the routine probable cause analysis, held that the exculpatory facts, when weighed against the inculpatory facts, were not

9

strong enough to undermine a finding of probable cause, such that no reasonable jury could find facts that would lead to the conclusion that the corrected warrant would have lacked probable cause. Id. at 791-92. The court reasoned that the reliability of the victim's positive identification was not, from the vantage point of the arresting officer, undermined even though her identification was inconsistent with her "inherently incompatible" description of the assailant. Id. at 791. The court also considered the fact that there were three exculpatory facts: (1) the height differential between the description and the defendant; (2) the inability of one of the eyewitnesses to identify the defendant in the photo array; and (3) the statement of a witness that he saw the defendant in the shopping center when he was supposedly in the flower shop. Id.

Here, there is no dispute that the victim identified the assailant as being someone known to her. Misidentification or improper identification is not an issue. The claim is that Detective Monahan omitted Dean's log of calls from the alleged victim from the evidence presented to the municipal court judge issuing the warrant. The notes provide, according to Detective Monahan, that the alleged victim sought money from Russo and Dean to keep quiet regarding the assault. (Pl. Opp., Exh. A). Even if such evidence is viewed in light most favorable to Russo, it is not sufficiently exculpatory to outweigh the alleged victim's identification of him. The Court is satisfied that no reasonable jury could find facts that would lead to the conclusion that Russo's "corrected" warrant lacked probable cause. Therefore, it is not necessary to reach the second prong of the qualified immunity analysis. Accordingly, Detective Monahan's motion for summary judgment as to the § 1983 claims will be granted.[3]

---

[3]Russo alleges, in addition to the unlawful arrest, that his constitutional rights were violated because he was subjected to cruel and unusual punishment by virtue of his three day incarceration, he was deprived of due process or counsel, and he was prosecuted maliciously.

      2.  <u>Section 1983 Claims Against Township and Police Department</u>

      The remaining § 1983 claims are against the Voorhees Township and Voorhees Township Police Department for, <u>inter alia</u>, failing to adequately train, supervise, discipline, or otherwise direct police officers concerning false arrest and the other constitutional claims cited above. However, because the Court holds that Detective Monahan's actions did not violate Russo's constitutional rights, it would follow that Voorhees Township and Voorhees Township Police Department are not liable for failing to prevent something that did not occur. Accordingly, Voorhees Township's and Voorhees Township Police Department's motion for summary judgment as to the § 1983 claims will be granted.

  **B.  Plaintiff's § 1985(3) Claims Against Defendants**

      To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. <u>Lake v. Arnold</u>, 112 F.3d 682, 685 (3d Cir. 1997) (citing <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971)). Defendants argue that Russo has failed to allege both a conspiracy and any racial or otherwise class based, invidiously discriminatory animus. (Def. Br., p. 15.) Russo argues that there was a conspiracy and that he is a member of a class--the impoverished.

---

Russo has only argued that these claims arise by virtue of the fact that his arrest was unlawful. Because the Court finds that the arrest was not unlawful, it is unnecessary to address Russo's remaining constitutional claims.

1. Conspiracy

The conspiracy element of § 1985(3) requires "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon ,' and 'an overt act that results in that damage.'" Lenard v. Argento, 699 F.2d 874, 882 (7th Cir. 1983) (citing Rostermund v. United States Steel Corp., 474 F.2d 1139, 1145 (8th Cir. 1973)).  In support of his claim, Russo argues that "it is clear" that Detective Monahan did not act on his own; "[r]ather, he was acting with other officers to deprive [him] of his civil rights."  (Pl. Opp., p. 10.)  Even when affording Russo as much leniency as is possible at the summary judgment stage, he is unable to allege any facts that would constitute a conspiracy.

Russo has failed to allege that there was ever an agreement between Detective Monahan and the other officers to deprive him of his civil rights.  An agreement is a necessary component of a conspiracy.  Graves v. U.S., 961 F. Supp. 314, 320 (D.D.C. 1997) (citing Breckenridge, 403 U.S. at 102).  Therefore, the Court finds that there is no genuine issue of material fact as to whether a conspiracy existed.  Although this finding alone is sufficient to grant Defendants' motion for summary judgment, the Court will address the class membership requirement.

2. Class Membership

Section 1985(3) prohibits conspiracies entered into "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. §1985(3).  The Supreme Court stated that "[t]he language requiring the intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based,

invidious discriminatory animus behind the conspirators' action." Griffin, 403 U.S. at 102.  Such animus against the class must be based on: (1) immutable characteristics for which the members of the class have no responsibility; and (2) historically pervasive discrimination.  Lake, 112 F.3d at 688 (citing Novotny v. Great Am. Fed. Sav. & Loan Ass'n, 584 F.2d 1235 (3d Cir. 1978)), rev'd on other grounds, 442 U.S. 366 (1979).  In Novotny, the Third Circuit relied on Congress' characterization of gender-based classifications as "inherently invidious and upon the immutable nature of gender to conclude that women, as a class, were entitled to the protection of section 1985(3)."  Lake, 112 F.3d at 687 (emphasis added).  The court reasoned that "sex, like race and national origin, is an immutable characteristic determined by the accident of birth."  Novotny, 584 F.2d at 1243.

Defendants argue that Russo has failed to identify any racial or otherwise class-based, invidiously discriminatory animus as required by § 1985(3).  (Def. Br., p. 15.)  Although Russo had neither pled any "class-based" animus, as the term has been defined by the Supreme Court and the Third Circuit, nor provided any evidence to support that argument, his reply brief claims that he was a member of a protected class--the impoverished.  (Pl. Reply, p. 12.)  To this end, Russo further claims that he was so poverty stricken at the time of this filing that he could not raise the money for fifty thousand dollars ($50,000) bail.  (Pl. Reply, p. 12.)  However, he fails to provide legal authority to support his claim that the impoverished are a class for purposes of § 1985(3) and the Court has been unable to find legal authority that would give merit to such claims.

Russo's reliance on the holding of Lake that "[t]here are no precise parameters defining the boundaries of 'class' within the meaning of section 1985(3)" is misplaced.  (Pl. Reply, p. 11.)

The Lake Court explicitly stated that it borrowed the reasoning from Novotny to frame its holding that the handicapped are a protected class. The court reasoned that the mentally challenged bear no responsibility for their characteristics and have been pervasively discriminated against, using the "parameters" established in Novotny and endorsed by Lake.

Likewise, Russo's reliance on Bray is misplaced. Russo argues that in Bray, the Supreme Court held that "a class for purposes of § 1985(3) must only be 'something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors.'" (Pl. Reply, p. 11) (citing Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993) (emphasis added). However, in context, the Court explained that such a "definitional ploy would convert the statute into the 'general federal tort law' it was the very purpose of the animus requirement to avoid." Bray, 506 U.S. at 269. Russo fails to explain how his case is not the exact situation the Court was seeking to protect against in Bray.

Based on the above, the Court declines to extend the class definition under § 1985(3) to include the impoverished. Accordingly, summary judgment will be granted in Defendants' favor on the § 1985(3) claim.

**C. Russo's § 1986 Claims Against Defendants**

Section 1986 is a derivative of § 1985 and, by definition, depends on a violation of § 1985. Therefore, if the "claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also." Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980). Therefore Russo's § 1986 claim must fail and summary judgment will be granted in Defendants' favor.

### D. State Law Claims

Supplemental jurisdiction of state law claims by this Court is governed by 28 U.S.C. § 1367 which states in pertinent part:

> (a) . . . [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>
> * * *
>
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction.

28 U.S.C. § 1367(a), (c).  Therefore, the Court declines to exercise supplemental jurisdiction over Russo's state law claims.  Accordingly, Russo's state law claims under count II of his Complaint will be dismissed.

### IV. CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 will be granted.  Russo's state law claims will be dismissed without prejudice.

An appropriate Order will issue this date.


/S/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ, U.S.D.J.

Dated: November 17, 2005